People of the State of Illinois ex rel. Illinois State Dental Society, et al., Plaintiffs-Appellees, v. Thomas P. Duncan, d/b/a Pullman Dental Laboratory and Roseland Dental Laboratory, Defendant-Appellant.

Gen. No. 49,905.

First District, Fourth Division.

March 10, 1965.

Jacobs, Ribstein & Lieberman, of Chicago (Eugene Lieberman, of counsel), for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Owen Rall and John R. Porter, of counsel), for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals from an order finding him guilty of contempt of court and imposing a sentence of 30 days in jail.

On December 22, 1960, a decree was entered permanently enjoining defendant from practicing dentistry. Among the prohibited activities were:

Managing, operating, conducting or being proprietor of a place of business where dental operations are performed directly with or for the public, either under Defendant's individual name or under a trade name or the name of a company;

Taking impressions of the human tooth, teeth, or jaws or performing any phase of any operation incident to the replacement of a part of a tooth, a tooth, teeth or associated tissues, by means of a crown, a bridge, a denture or other dental appliance;

Furnishing, supplying, constructing, reproducing or repairing, or offering to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as "plates"), bridges, or other substitutes for natural teeth to the user or prospective user thereof;

A rule to show cause why defendant should not be adjudged guilty of contempt of court for violation of the decree during October and November of 1962 was filed on November 20, 1962. Hearings were commenced on February 4, 1963. On June 20, 1963, while the proceedings were pending, a supplemental petition for a rule to show cause alleging violations in 1963 was filed.

Mrs. Kapus, an employee of the Illinois State Dental Society, testified that on October 5, 1962, she went to defendant's place of business, posed as a Mrs. Pokorski and asked to have her denture repaired; that defendant's receptionist Betty had her sign a statement that defendant did not advertise, do extractions or fill teeth; that defendant repaired the denture but when she had difficulty in trying to insert it, defendant put his fingers in her mouth to push it up. After an adjustment, defendant got a match stick and asked her to bite on it which she did and this forced the denture up causing her much pain. Mrs. Kapus further testified that she paid $3 to the receptionist, asked for a receipt and was refused; that subsequently she went to the office of a dentist who removed the denture with a mallet and chisel.

Mr. Hovanec testified that he was a paid investigator for the Illinois Department of Registration and that on October 17 together with Mrs. Kapus he went to defendant's establishment posing as Mr. Pokorski; that he too signed a statement; that defendant took impressions for an upper denture; that witness was shown photographs of satisfied customers demonstrating how they looked before and after dentures were made for them; that defendant measured his head, nose and side of face; that he paid $15 to the receptionist, Betty. This testimony was corroborated by Mrs. Kapus. Hovanec further testified that he returned on October 24 and defendant fitted and re-

fitted the new dentures; that he paid $70 but did not obtain a receipt although he requested one.

John Donnelly, an investigator, testified that on March 25, 1963, he saw Betty, the receptionist in defendant's office; that she quoted a price of $85 for a denture; that in defendant's office Dr. Cohan, a dentist, took impressions but that defendant assisted; that after the denture was made defendant fitted and refitted it and tested the "bite."

Dr. Cohan testified that he was a licensed dentist; that commencing January 8, 1963, he worked for defendant at a salary of $150 per week; that defendant paid the rent; that Betty Bolda's duties included answering the phone, secretarial work, instructing patients and quoting prices; that he (Dr. Cohan) did not pay her salary; that defendant supervised every patient and "went into people's mouths inserting dentures in and taking them out, grinding them, refitting them, photographing patients before and after dentures. I observed him do this daily. Donnelly was one of these customers."

■ Defendant did not testify. He urges that the proceeding was a criminal contempt and that defendant had to be proved guilty beyond a reasonable doubt. We do not decide this point because even accepting the stringent requirements of this rule, we find that the evidence was clear and convincing and the charges were proven beyond a reasonable doubt.

■ Defendant next argues that the doctrine of equitable estoppel bars relief to plaintiffs. The evidence, however, does not disclose any wrongful conduct on the part of the investigators or any misrepresentation of material facts. The use of an assumed name, a misstatement of how a denture was broken or why it was needed are not material in considering whether defendant violated the injunction. The stage was set by the investigators but the de-

282

fendant performed the acts. The plea that defendant was entrapped was also raised in People v. Boyden, 400 Ill 409, 81 NE2d 142, where the charge of unlawful practice of dentistry was based on the testimony of a paid investigator. The court said, at page 413:

> Simply affording the defendant the opportunity to violate the statute does not constitute an entrapment. People v. Guagliata, 362 Ill 427; People v. Mattei, 381 Ill 21.

■ The thrust of defendant's appeal is that he had committed mild, technical violations which were instigated by paid employees of the dental society and that therefore the penalty was too severe.

The evidence indicates that defendant evolved a pattern of activity in superficial compliance with the law in some respects but that in actual practice he wilfully and knowingly performed acts which were in violation of the injunction.

In his decision, the chancellor stated in part:

> I see nothing wrong with what the supposed inspectors did here at all.
>
> . . . . . .
>
> Now, there isn't any question in my mind . . . that this man violated; he continued to violate. There is no question about it at all in my mind.

The trial chancellor saw and heard the witnesses. The evidence strongly supports his conclusion. We find no reason to disturb the order and sentence of the trial court. They are affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.